Kraus v. State.

RUDOLPH KRAUS v. STATE OF NEBRASKA.

FILED OCTOBER 5, 1918. No. 20575.

1. **Criminal Law:** HOMICIDE: INSTRUCTIONS. Where one is charged with having committed murder in the first degree, it is the duty of the court to instruct regarding all the inferior degrees of homicide to which the evidence is properly applicable, even though such instructions are not requested.

2. **Homicide:** INSTRUCTIONS: INTOXICATION. Intoxication is not an excuse for committing a crime. But when in a criminal prosecution the evidence tends to prove that the defendant was intoxicated at the time of the commission of the offense charged, even though the killing is admitted, it is the duty of the court to instruct the jury that if they believe from the evidence that de-

fendant was intoxicated, and that he was so intoxicated at the time of the shooting as to be incapable of deliberation or premeditation, or of forming a felonious intent to shoot and to kill decedent, in such case it would be their duty to return a verdict of murder in the second degree, or of manslaughter, or of not guilty.

3. Criminal Law: TRIAL: REMARKS BY COURT. After sustaining an objection to a question that the court propounded, the court remarked: "If the counsel for the defense objects to securing information, we want the objection sustained." *Held*, the remark was improper and was prejudicial to the rights of the accused.

4. ———: ———: APPOINTMENT OF COUNSEL. Error cannot be predicated on the refusal of the court to appoint counsel, under section 9081, Rev. St. 1913, to defend an indigent person accused of crime, when counsel who is competent to conduct such defense announces in open court that he will appear for the defendant "as a friend of the court," even though other counsel should be appointed.

5. Counties: INDIGENT PERSONS: LIABILITY FOR COUNSEL. In such case the counsel making such proffer to defend, and who does conduct such defense, is not entitled to receive pay from the county for the services so rendered, nor for services and expenses in this court.

ERROR to the district court for Saline county: RALPH D. BROWN, JUDGE. *Reversed.*

*Bartos & Bartos,* for plaintiff in error.

*Willis E. Reed, Attorney General, Orville L. Jones* and *Charles F. Barth, contra.*

DEAN, J.

This case was brought here on error from the district court for Saline county. Rudolph Kraus, a young man 26 years of age, was charged with feloniously shooting and killing his wife. He was convicted of murder in the first degree and sentenced to the penitentary for life. The killing was admitted. The defense was insanity superinduced by intoxication, and intoxication at the time of the killing.

The tragedy occurred on February 21, 1917, at the farmhouse of defendant, where, besides his wife, he shot and killed his only children, a daughter and a

son aged two and four years, respectively. He attempted suicide, shooting himself in the left temple and in the center of his forehead and also just below his heart. The bullet that entered his temple totally and permanently destroyed his eyesight. The bullet that entered his forehead was yet imbedded in the front part of his brain when the case was tried.

Defendant was a farmer. His assets amounted to $1,800 and his liabilities were $3,800. The day before the shooting he went to the nearby town of Daykin, and visiting a saloon there he drank some beer. While there he was told by some neighbors that the winter wheat was all killed. He said that discouraged him, and he drank some more, and also bought a gallon of beer, a bottle each of whiskey and kimmel, the latter an intoxicant, and took the entire purchase home with him, where he arrived shortly before midnight. His wife had not yet retired. He said that he consumed nearly all of the liquor, and that sometime between 4 and 6 in the morning he entered the house and shot and instantly killed his sleeping victims by shooting them through the head. Immediately thereafter he lay down between his children and attempted to take his own life. He testified that, between midnight and the time of the shooting, he wandered about the premises and heard voices telling him to destroy his family. He said: "I listen, it may be from God. * * * I not see nobody." Besides his own, there is disinterested testimony which shows that defendant was apparently fearful that himself and his entire family inherited a tubercular tendency. But it appears that there was not a trace of that malady in any member of his own nor his father's family.

He testified: "Q. Why didn't you kill yourself and let your wife and the babies live? A. Because I love mine wife and kids. * * * Because I knew according to or along side of my mother and my sisters and

my brother that tuberculosis is incurable, and because I knew that I have lots of debts, and that the wheat is gone, and I was relying on that that I would get help out of the wheat after threshing it out. I had 70 acres of wheat. And the voices kept urging me on that I should do this. Then I went into the kitchen, and I cut off the lives of my dear ones, and wanted to cut off my own life.''

It was not shown that there had ever been any ill feeling between defendant and his wife. That defendant was financially embarrassed and that he had lost his wheat crop was the only motive ascribed to the accused by the state for the commission of the crime with which he was charged.

There was disinterested testimony showing that Kraus had been a hard drinker of intoxicants for many years. The proof seems to show that he drank nearly, if not quite, all the liquor that he brought from Daykin, and in oral argument here the county attorney stated that he was unable to say from the record that the defendant did not drink the liquor before the shooting. Notwithstanding the testimony respecting intoxication, the court entirely ignored that issue in the instructions, and informed the jury in instruction numbered 20: ''That the defense in this case is the insanity of the defendant, and that if you acquit this defendant you must state in your verdict that you do so on the ground of insanity.'' In view of the record, the court erred in so restricting the inquiry of the jury. It should have been instructed on the question of intoxication as well. If the defendant was sane, but was so intoxicated at the time of the shooting, if he was intoxicated, as to be incapable of deliberation or premeditation or of forming a felonious intent to kill, that was a question of great importance.

Defendant also complains because the jury was not instructed respecting any degree of homicide save only

as to murder in the first degree. On this point in the instruction numbered 4 the court informed the jury: "The essential elements of the crime of murder in the first degree, as charged in the information, are: (1) An unlawful killing of a person; (2) that the killing was done purposely; and (3) that it was done with deliberate and premeditated malice." In view of the evidence, the court erred in omitting to instruct the jury respecting the different degrees of homicide. The rule in this country is almost universal that in a case charging first degree murder it is the duty of the court to instruct respecting all of the inferior degrees of homicide to which the evidence is properly applicable, even though such instructions are not requested. *Carleton v. State,* 43 Neb. 373; *Young v. State,* 74 Neb. 346; 13 R. C. L. 933.

The court interrogated a witness, and in sustaining an objection interposed by defendant remarked: "Owing to the objection, the question may be withdrawn on the objection of counsel for the defense. If the counsel for the defense objects to securing information, we want the objection sustained." The defendant argues earnestly that the remark was prejudicial to his rights. It seems to us that in the respect noted the court erred. If the information sought was material the objection should have been overruled. In any event the remark was out of harmony with the spirit that should prevail in the trial of a defendant for a capital offense. Such an observation would scarcely fail to cause an intelligent jury to believe that in the opinion of the court the defense was seeking to conceal material testimony, and the remark was therefore prejudicial to the accused. It is well known to those who are familiar with jury trials that jurors are usually alert to discover the attitude of the court respecting the merits of the case, and particularly in criminal actions. For this reason, among others, the court should avoid even the appear-

ance of partiality as between the parties. The court's inadvertence is evident, and the objectionable remark was unwarranted.

Defendant is penniless. All of his assets were prorated among his creditors before the trial. His counsel in the present case appeared for him at the preliminary hearing, and the usual request was made in the district court under section 9081, Rev. St. 1913, for the appointment of counsel to conduct his defense. The court refused to make any appointment for the reason that F. W. Bartos, Esquire, in open court announced that his firm would appear in the case "as a friend of the court," even though other counsel were appointed. The act providing for appointment of counsel to defend in a felony trial was enacted primarily for the benefit of an indigent defendant, to the end that his rights might be fully protected. In the present case the accused had a vigorous and able defense and his every right was safeguarded. No abuse of judicial discretion in the premises is shown, and under the circumstances error cannot be predicated on the court's refusal to appoint counsel. It has been well said that the conduct of causes is not the function of the *amicus curiæ*. *Taft v. Northern Transportation Co.*, 56 N. H. 414. We believe it proper to say that the ethics of the profession forbid that one who volunteers his services as "a friend of the court" should accept either fee or reward for services so rendered. In oral argument defendant's counsel suggested that in any event they should be repaid for the expense of printing the brief of their client in this court. But such claim cannot be allowed for the same reason.

Many other assignments of error have been called to our attention, but they do not seem to require discussion. For the errors pointed out, the judgment is reversed and the cause remanded for further proceedings in accordance with law.

                                        REVERSED.