IVAN HANSEN V. STATE OF NEBRASKA.
3 N. W. (2d) 441

FILED APRIL 17, 1942. No. 31282.

*A. B. Wallace,* for plaintiff in error.

*Walter R. Johnson, Attorney General,* and *Herbert T. White, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

PAINE, J.

The defendant was convicted of assault to do great bodily injury, and sentenced to one year in the penitentiary, and brings error proceedings to this court.

Complaint was filed in the county court for Boyd county on December 9, 1940, charging that Ivan Hansen did on December 7, 1940, unlawfully, intentionally and feloniously assault, strike and wound John Quest, with the intent then and there to inflict great bodily injury upon the person of John Quest, contrary to the statutes in such case made and provided and against the peace and dignity of the state of Nebraska. The defendant waived preliminary hearing, and was bound over to the district court, bail being fixed in the sum of $1,000.

To the information filed in district court, the defendant entered plea of not guilty, and his trial in the district court was set for March 17, 1941.

On March 19, 1941, the jury returned a verdict of guilty as charged in the information, but recommended that, as this appears to be the first major offense, the court exercise leniency in pronouncing sentence.

A brief summary of the evidence shows that this assault occurred in Naper, a town of less than 200 population in Boyd county, near the South Dakota line, on a Saturday night. John Quest was the manager of the small light plant, and was 59 years of age, blind in one eye, wore glasses, and weighed about 200 pounds.

Ivan Hansen (commonly called "Swede"), the assailant, was 38 years of age, over 6 feet tall, and weighed nearly 215 pounds. These parties had known each other for 24 years, and have had minor difficulties down through the years, so that it can be said "bad blood" existed between them. The defendant said that trouble started between them in 1929. Further trouble developed when defendant was running a liquor store in Naper.

John Wentz testified for the state, and was the only witness who saw the affair from beginning to end. He saw the defendant come into the crowded pool hall and talk to Quest for five or ten minutes. He testified that the defendant looked "kind of wild," started for the door, and said, "Come on, John," and so the witness thought something out of the ordinary was about to happen, and followed along behind the two principals. The defendant started off toward the light plant, Quest following him. Suddenly the defendant hit Quest, and kicked him, and he went down, and he kept kicking him after he went down. Witness testified that he grabbed defendant, and told him he would kill him if he kept kicking him, and that the defendant answered, "That's what I want to do, to kill that son-of-a-bitch for the last three years." Others came out and finally pulled the defendant away from Quest.

Dr. R. E. Kriz testified that about midnight John Quest was brought to his office in Lynch by two or three men; that Quest was irrational, had been badly beaten up, his left eye was blacked, he had several teeth loose, one was knocked out, a swelling back of his right ear, bruises on the jaw, a marginal fracture of the fibula of the right leg. Two days later, when he called to see Quest at his home in Naper, he discovered that he also had the sixth and seventh ribs broken on the right side. He treated all these injuries, and told the injured man to stay in bed for ten days or two weeks, but does not know whether he did or not, as he only saw him once at his home after his injuries.

The defendant makes no objection to the instructions given the jury, but charges 62 errors of the court in the con-

duct of the trial in the district court. It is charged that the court erred in ruling upon evidence, and refusing to permit evidence of previously communicated threats, also in refusing to admit evidence leading to the immediate provocation of the assault and prior trouble between the parties. In addition, it is repeatedly charged that the trial judge made improper remarks in the presence of the jury that tended to highly discredit the defendant and his witnesses and the defendant's evidence before the jury, and that, because of this prejudicial conduct, the accused did not have a fair trial, such as is guaranteed him under the law of Nebraska.

Among the many errors set out by counsel for the defendant, we will consider only a few, alleged to be the most serious.

On cross-examination of John Wentz, he was asked: "Q. 194. Had you ever heard Quest—you didn't hear Quest that night in the pool hall razzing the fellows around the card tables, did you? Mr. Brennan (county attorney): Objects to this as improper cross-examination. The Court: Haven't you covered all that; this man says he didn't hear one word they said; isn't that enough? Mr. Wallace: He was right there beside him? The Court: He told you that; he sat on the chair beside Quest, and then Quest was over by the stove and he didn't hear one word that was said there. That ought to cover it. Defendant excepts." It is insisted that, as this was the principal witness for the state, the remarks of the court tended to impress the jury with the conviction that the court thought the witness was telling the truth, and that there were no prior threats and difficulties, and that if there were any they were not material, and the above action by the court was an uncalled for limitation on cross-examination when an attempt is being made to bring out the facts, and no such limitation was placed upon the prosecution by the court, and it is further objected to on the ground that it was instructing the jury orally.

The same witness was asked on cross-examination by defendant's counsel: "Q. 195. Are you in or out of the beer taverns quite often? Mr. Brennan: Objects as immaterial.

The Court: What has that got to do with this case? Let's try this case. Mr. Wallace: There is lots of things to be shown here. The Court: The fact that a man goes in a beer tavern a lot of times—he told you he was sober and wasn't drinking; he's told you all about that. Now if he went in there every time he was in town would not change the facts in this case any. Sustained. Defendant excepts." Defendant argues that the court erred in sustaining the objection to this preliminary question to show prior difficulties between the parties in the presence of this witness, and the remarks of the court do not reflect the evidence, as the witness testified that he had been drinking, and were prejudicial as implying that defendant was not attempting to bring out the true facts.

The witness had made this answer on cross-examination before the court's remark: "I might have drank a glass of beer, I don't know."

On cross-examination of complaining witness: "Q. 754. Was you thumbing your nose at Hansen in the pool hall that night of December the 7th? The Court: That wouldn't be any excuse for an assault. You will have to try this lawsuit, Mr. Wallace, right down to where it belongs. Defendant excepts." Counsel argues that this was an undue restriction on cross-examination and an oral instruction that prior threats and difficulties were immaterial.

On direct examination of Clarence Andersen this question was propounded to him: "Q. 856. Did you hear him that evening—did you hear him make any remark about that he had a great mind to whip him? Mr. Brennan: Moves the court to strike the question as leading and very suggestive. The Court: Sustained. The question will not be regarded by the jury, you will absolutely pay no attention to it, gentlemen. Defendant excepts."

After the witness Clarence Andersen had testified that he heard John Quest on evening of the alleged assault make remarks in regard to Ivan Hansen in beer tavern, he was asked the following questions: "Q. 859. Just tell the court what was said. The Court: Was this before the fight? A. Yes,

sir. The Court: How long? A. I couldn't swear to that. The Court: About how long? A. I imagine probably a couple of hours anyway. The Court: I will not permit it then; and the jury will disregard the question. And I may say further there is no foundation for this question. Defendant excepts. Q. 860. Now how close can you fix that remark that he said? The Court: He already fixed it—two hours before. Q. 861. You fix the time at about 9 o'clock? The Court: You are wasting time this morning; you have one ruling, which ought to be sufficient. I have said that would not be permitted. Defendant excepts. Mr. Wallace: The defendant offers to prove by this witness that about a half an hour before the fight he was in the beer tavern in Naper, Nebraska; that Mr. *Benson* (Hansen) was present, and that the complaining witness said at that time that I am a great mind to whip that white livered son-of-a-bitch; referring to Hansen; and this witness will testify that some one talked him out of doing it at that time; and that said statement was made loud enough for others to hear the remark; and that Ivan Hansen was close enough to hear it, and he seemed to pay no attention to it. The Court: That will not be allowed. Defendant excepts."

On direct examination the defendant testified that he had had prior difficulties with the complaining witness, and he was asked the following questions: "Q. 956. Now did you have some words with him one time in regard to a liquor store, when you were running a liquor store in Naper? A. Yes. Q. 957. What was the occasion for that? Mr. Brennan: Objects as incompetent, irrelevant and immaterial; no foundation laid, and it doesn't constitute a defense in this case. The Court: That was a long time before December 7, 1940? A. Yes. The Court: Sustained. Defendant excepts. Q. 958. I want to go back to the very first, my idea is to start from the first of it. Now when was the first time he ever threatened you? How far back was that? Mr. Brennan: Objects as incompetent, irrelevant and immaterial, and no foundation laid. The Court: Sustained. Defendant excepts. Q. 959. Did he annoy you in regard to the

matter of your liquor store, and did you have words between you on that? Mr. Brennan: Objects as incompetent, irrelevant and immaterial; no foundation laid, and no defense in this case. The Court: Sustained. I might suggest Mr. Wallace, that we try this lawsuit. Defendant excepts. Mr. Wallace: How far can I go back if the court wants it that way? I would like to show some preliminaries leading up to this night; that is my idea of trying this lawsuit. The Court: I will have to rule on the evidence as it comes out. Q. 960. You and Mr. Quest had had some trouble very recently before this had you not, Mr. Hansen? A. Yes. Mr. Brennan: Objects as incompetent, irrelevant and immaterial, and no foundation laid. The Court: Sustained."

Further in the direct examination of the defendant, referring to a conversation he had with the complaining witness in the same beer hall a few nights before, he was asked: "Q. 1063. Did Mr. Quest make a statement there that night in regards to whipping you, or doing something to you, after eleven? Mr. Brennan: Objects as incompetent, irrelevant and immaterial, and no foundation laid; and no defense in this case. The Court: Sustained, and the jury will disregard the question absolutely. Defendant excepts. Mr. Wallace: The defendant offers to prove by this witness that a night or two before the fight that they was in the pool hall, him and John Quest, and some other parties, playing a game of cards, and that Quest made statements at that time for all of them to stick around there was a bounty on Swedes after 11 o'clock, implying he was going to whip Hansen after 11 o'clock. Mr. Brennan: Objects to this offer as being incompetent, irrelevant and immaterial, and no proper foundation laid, and no defense to this case. The Court: Sustained. Defendant excepts."

After a half dozen more questions relating to complaining witness making loud remarks against defendant a night or so before in this same pool hall, the court sustained another objection, and then added: "The Court: Now Mr. Wallace, you are flying right in the face of the rulings of this court deliberately; you are trying to put in evidence after I have

ruled it out. I don't know how much longer I am going to permit this. I have permitted you to make a lot of offers and I have heard them all, and I have tried to be patient. What Mr. Quest said a week before, if anything was said, had nothing to do with this affair that night out back of the pool hall. I have told you what the law was the best I could. I don't think you ought to pursue this line of questioning any further." Defendant's counsel excepted to these remarks of the court, then made a complete offer to prove.

In our opinion, if competent evidence was offered that a half-hour before the fight the complaining witness had threatened to assault the defendant, it was improper to exclude such evidence. See *People v. Tillman*, 132 Mich. 23, 92 N. W. 499.

"Evidence of the relations existing between accused and the person injured, prior to the crime, is admissible." 16 C. J. 546.

"It is competent to show the state of feeling of a witness when called to testify, for the purpose of giving the jury all the facts necessary to a full and fair consideration of his evidence, and enable them to determine the degree of credit to be accorded thereto." 28 R. C. L. 615, sec. 204. See, also, *State v. Kenstler*, 44 S. Dak. 446, 184 N. W. 259.

"In order to determine who was the aggressor, evidence of previous difficulties between the parties may be considered. * * * And where the state has introduced evidence of a previous difficulty between the prosecutor and defendant, the latter may show that the prosecutor was the aggressor in the previous affair." 5 C. J. 787.

The several rulings of the trial court which we have set out in this opinion are but a few of the 62 such instances set out at length in the defendant's brief, and indicate the general trend and character of the court's comments. Some of the comments made light of defendant's evidence, and gave full credence and weight to the evidence in opposition thereto.

A few courts have followed the federal courts in holding that the trial judge has the right to comment on the weight

of the evidence. See *State v. Hauptmann,* 115 N. J. Law, 412, 180 Atl. 809; *People v. Burlingame,* 257 Mich. 252, 241 N. W. 253.

California in 1934 amended its Constitution (art. VI, sec. 19) to permit such instructions, and in the same year New Mexico gave the trial judge right to comment on the evidence by court rule 70-106. See annotation, 113 A. L. R. 1308.

"The judge should, during the course of the trial, refrain from remarks that are calculated in any way to influence the minds of the jury. This includes remarks to counsel touching the management of the case and reflecting on their conduct, as well as those touching the character of the witnesses and the value of their testimony; and, if the remarks so made are material and improper, they may be prejudicial. Accordingly, if properly excepted to and brought into the record, they may work a reversal of the case on that ground. * * * The fact that prejudicial remarks as to the evidence were addressed to counsel, in the presence of the jury, and not to the jury does not destroy their prejudicial character." 26 R. C. L. 1026, sec. 27.

As a general rule, "It is the duty of the court to abstain carefully from any expression of opinion or comment on the facts or evidence, not only in its charge to the jury * * * but also on the examination of witnesses and otherwise during the course of the trial. The trial judge should not deny the existence of any fact bearing on the innocence of accused, or make any remark or inquiry in the presence of the jury concerning matters of fact at issue which indicates his opinion as to such facts." 23 C. J. S. 349, sec. 993.

"The court interrogated a witness, and in sustaining an objection interposed by defendant remarked: 'Owing to the objection, the question may be withdrawn on the objection of counsel for the defense. If the counsel for the defense objects to securing information, we want the objection sustained.' The defendant argues earnestly that the remark was prejudicial to his rights. It seems to us that in the respect noted the court erred. If the information sought was

material the objection should have been overruled. In any event the remark was out of harmony with the spirit that should prevail in the trial of a defendant for a capital offense. Such an observation would scarcely fail to cause an intelligent jury to believe that in the opinion of the court the defense was seeking to conceal material testimony, and the remark was therefore prejudicial to the accused. It is well known to those who are familiar with jury trials that jurors are usually alert to discover the attitude of the court respecting the merits of the case, and particularly in criminal actions. For this reason, among others, the court should avoid even the appearance of partiality as between the parties. The court's inadvertence is evident, and the objectionable remark was unwarranted." *Kraus v. State,* 102 Neb. 690, 169 N. W. 3.

The jury are often so influenced by a casual and unintended statement of the court that thereafter they fail to exercise their own judgment independently, and to this extent the defendant loses his privilege of a fair trial by the jury.

On the other hand, positive declarations, made in an emphatic, argumentative, or sarcastic manner by the court cannot be dislodged from the minds of the jury by a later instruction that they are the sole judges of questions of fact.

As has been said repeatedly, any comment the court makes, in addition to ruling on an objection to the introduction of evidence, must always be fair to the accused, judicial, and dispassionate, and not present the picture of the case out of focus.

The fact that, in the case at bar, the jury in their verdict recommended that the court exercise leniency indicates that the feeling shown by the court towards the accused was recognized by the jury.

The state urges that we carefully consider that part of section 29-2308, Comp. St. 1929, reading as follows: "No judgment shall be set aside * * * or judgment rendered in any criminal case on the grounds of misdirection * * * or for error as to any matter of pleading or procedure if the supreme court, after an examination of the entire cause,

shall consider that no substantial miscarriage of justice has actually occurred." This section is considered at length in 13 Neb. Law Bulletin, 181, in which it was said: "This of course does not mean that every case must be affirmed merely on a showing of guilt of the defendant. * * * The statute does not do away with rights granted to defendants by the Constitution. Further than that it would seem to guarantee the defendant a fair trial. Apparent technicalities may prevent a fair trial in particular cases and defendants should be allowed to show that they have so prevented."

This court has heretofore said, in reversing a conviction: "During the course of a jury trial, it is considered improper for a trial judge to support his rulings by making significant remarks in reference to the evidence to the jury. *Goldman v. State,* 128 Neb. 684, 260 N. W. 373.

After carefully considering the prejudicial errors in this record, we have reached the conclusion that the defendant was not given a fair trial, as required by law, and the sentence is hereby set aside and the judgment reversed, and a new trial ordered.

REVERSED AND REMANDED.

ROSE, J., dissents.