GEORGE MOORE, APPELLANT, V. STATE OF NEBRASKA, APPELLEE.

23 N. W. 2d 552

FILED JUNE 21, 1946. No. 32014.

*Alfred A. Fiedler* and *Eugene D. O'Sullivan,* for plaintiff in error.

*Walter R. Johnson, Attorney General,* and *C. S. Beck,*

for defendant in error.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

CHAPPELL, J.

This is a criminal case. Plaintiff in error, George Moore, hereinafter called defendant, entered a plea of not guilty to an information substantially charging, as provided in section 28-410, R. S. 1943, that he shot a pistol with intent to wound one Levi Rose. Upon trial to a jury defendant was found guilty. His motion for new trial was overruled and he prosecuted error to this court.

The assignments of error are: (1) That the verdict is contrary to law and not sustained by the evidence; (2) that the trial court erred in the admission of evidence; (3) erred in the giving of certain instructions and refusal to give a requested instruction; and (4) that the assistant county attorneys and the trial court were guilty of misconduct prejudicial to defendant. We find that some of these assignments of error have merit and require reversal.

Section 28-410, R. S. 1943, provides: "Whoever shall maliciously shoot, stab, cut or shoot at, any other person with intent to kill, wound or maim such person, shall be imprisoned, * * * as therein provided.

In the light thereof we have examined the record to ascertain whether the evidence was sufficient to sustain the verdict. The record discloses without dispute that defendant with others, including complainant, attended a party given by one Nate Burnett at his home in Omaha, where late in the evening the host and several of his guests engaged in a game of craps. The complainant, hereinafter called Rose, concededly was in the game and during the evening was more or less under the influence of intoxicating liquor. There is evidence adduced by the state that he rolled the dice and lost. Defendant then declined the play after which the host wagered a substantial sum which Rose attempted to cover with a lesser amount and demanded of defendant who had the dice: "Put the dice down." Rose

and defendant then argued with each other over the dice and the play. Mumbling that he was leaving but would be back, Rose left the game and went into another room. He later returned and said in substance that he came back to let people know he was not scared of defendant or anybody. As a witness for the state he admitted that he was "hotheaded at any time" and did not "like to be bothered" but there is no evidence in the record that he had a weapon upon his person.

After his return Rose mumbled something to the effect that "The best thing you people can do is to kill me." The defendant then said: "What is the matter with you; do you want me to kill you or something?" Rose replied: "That is the best thing you can do, is kill me. * * * I aint scared of nobody." There is evidence that defendant pulled a gun, Rose grabbed for it, and they both went down fighting. One George Carr, later deceased, voluntarily entered the affray. While they struggled the gun was fired when, as Rose says, he knocked it up in the air. The bullet struck Rose on the right hand between the thumb and forefinger inflicting superficial injury. George Carr once had the gun but he dropped it and defendant picked it up. Rose himself once had the gun during the struggle but it escaped his possession.

Wrestling and fighting they moved out of the room into another and back again during which period others called "Don't shoot that man" but a gun was discharged a second time, striking Rose in the shoulder. There is evidence that defendant had a gun at a time when Rose had him down on the floor and the second shot was fired but the evidence is not clear whether there were one or two guns involved or just who shot Rose the second time. Rose testified that defendant shot him in the hand but that he couldn't say who shot him the second time.

Defendant himself did not testify and his witnesses in the confusion were unable to see or know who had a gun or did the shooting. They say that Rose belligerently re-

turned to the room, pushed others aside, and lunged at defendant whereupon they both went down behind the table fighting. A shot was heard and the light over the table went out while other guests were attempting to escape from the room.

In such a situation we find that there was sufficient competent evidence to sustain the verdict and that it ordinarily would be sustained in the absence of other error hereinafter discussed.

Defendant next contends that the trial court erred in permitting the assistant county attorneys, over defendant's objections, to impeach their own witness, Nate Burnett, by having the court reporter read to the jury the evidence given by Burnett upon the preliminary hearing, without first having laid a sufficient or proper foundation therefor, by specifically calling to Burnett's attention, by proper questioning, the specific claimed variances or disagreements in his testimony as given at the preliminary hearing and later upon the district court trial.

The answer to that contention is that there does not appear in the record that any such evidence was ever read to the jury by the court reporter at the trial. The facts are that while Burnett was on the stand as a witness for the state some of his answers surprised the state, as apparently in conflict with or evasive of a part of his testimony given as a witness at the preliminary hearing. Thereupon he was asked by the state whether he was called as a witness and testified at the preliminary hearing. Having answered in the affirmative, he was asked whether as a witness at that time he had been asked certain questions and had given certain answers thereto, to all of which the witness gave an affirmative answer. The witness was then twice asked whether he wanted to change his testimony but he remained silent and did not answer.

The applicable rule is that it is always permissible for a party to ask his own witness whether he had made prior statements inconsistent with his testimony and such

an inquiry is not objectionable, although the incidental effect of it is to impeach the witness. Such an examination is a proper one for the purpose of showing that the testimony of the witness operated as a surprise, or to test his recollection, refresh his memory, induce him to change his testimony, draw out an explanation of his apparent inconsistency, or to show the circumstances which induced the party to call him, and that such party had been placed at a disadvantage by unexpected evidence. 70 C. J., Witnesses, § 1225, p. 1025. Penhansky v. Drake Realty Construction Co., 109 Neb. 120, 190 N. W. 265. By proper interrogatories and answers given, counsel for the state demonstrated that the witness was changing his testimony in material respects from that given as a witness at the preliminary hearing, which of itself proves surprise without further foundation. Cornell v. State, 139 Neb. 878, 299 N. W. 231. We find that defendant's assignment of error is without merit.

Defendant argues that instruction Nos. 8, 9, 10, 15, and 16 given by the trial court were erroneous. We find that none of such instructions were prejudically erroneous and see no necessity of discussing them at length in this opinion. However, since the cause will be reversed and remanded for a new trial, we call attention to instruction No. 8 not because it erroneously stated the theory of self-defense but because it is argued that the first paragraph of the instruction assumed as a matter of fact that defendant was claiming to have shot in self-defense when the testimony of his witnesses would not justify that conclusion. We find that the first paragraph of the instruction would ordinarily be amenable to that criticism but that when considered in the light of defendant's requested instructions it was not prejudically erroneous.

Defendant in his proffered instruction No. 6 requested the court to instruct the jury as follows: "You are hereby instructed that upon the crime charged herein of shooting with intent to wound you may find the defendant guilty of

the lesser crime of assault or of assault and battery which crimes are defined as follows: 'Whoever assaults, or threatens another in a menacing manner, or strikes or wounds another shall be guilty of assault and battery.' " The tendered instruction was refused by the trial court and no instruction was given the jury upon that issue. Error is predicated thereon by defendant.

Section 29-2025, R. S. 1943, provides in part: "Upon an indictment for an offense consisting of different degrees the jury may find the defendant not guilty of the degree charged, and guilty of any degree inferior thereto; * * * ." That the charge of shooting with intent to wound necessarily may include the lesser offense of assault or assault and battery is conceded.

In McIntyre v. State, 116 Neb. 600, 218 N. W. 401, it was held: "In a prosecution * * * for cutting with intent to wound, error cannot be predicated upon the failure of the trial court to define the offenses of assault and assault and battery, in the absence of a request so to instruct." The opinion in Dolan v. State, 44 Neb. 643, 62 N. W. 1090, was also disapproved therein insofar as it was in conflict with the above holding.

In Mantell v. State, 141 Neb. 15 N. W. 2d 586, it was held: "Where the evidence is conclusive that the defendant shot with intent to wound, it is not error for the court to fail to instruct the jury with reference to the offense of simple assault, or assault and battery." As a matter of course it follows that it is not mandatory in such a situation that the instruction be given even though properly requested by the defendant.

However, the evidence in the record before us discloses that it is not conclusive that defendant shot with intent to wound, as charged in the information. Therefore, a different rule applies if such an instruction were properly requested by him.

The state contends that defendant's requested instruction incorrectly stated the law, therefore, the case should

be disposed of as if no request had been made, bringing the case within the rule stated in McIntyre v. State, *supra*. Koch v. State, 130 Neb. 119, 264 N. W. 172, wherein it was held that the "Trial court may properly refuse an instruction which contains both correct and incorrect statements of law," and Stevens v. State, 84 Neb. 759, 122 N. W. 58, wherein it was held: "It is not error to refuse an instruction which is not a correct statement of the law applicable to the theory of the defense," are cited in support of the state's contention. We have examined these cases and conclude that they correctly state the law because the instructions requested therein were clearly erroneous.

In that connection, however, we have a different situation in the case at bar. True, the instruction requested by defendant is not perfect. It is apparent that it could have been phrased in a more clarifying manner, as argued by the state, but we find that it was couched substantially in the language of the statute, and did not, in fact, incorrectly state the law.

We conclude that under the circumstances the trial court should have submitted the issue of assault or assault and battery to the jury, either as requested by the defendant or in some other appropriate manner, and that it was prejudicially erroneous to refuse to do so.

We turn then to the alleged misconduct of the assistant county attorneys in argument to the jury and their alleged hostile conduct toward their own witnesses. We have searched the record and with one exception find no statement in their argument to the jury which was not entirely justified by or reasonably inferable from all the evidence. With reference to the exception we find that the assistant county attorney in his argument said that Rose in his evidence testified that a certain statement, correctly quoted, was made by defendant, when, in fact, it was the witness, Burnett, who so testified. Such an inadvertent statement certainly could not be prejudicial to defendant. Further, we find nothing in the attitude of the assistant county at-

torneys toward the state's witnesses which could possibly be prejudicial to defendant.

On the other hand, we find that the alleged misconduct of the trial court in remarks made to counsel for defendant and to the witness, Levi Rose, were out of harmony with the spirit of justice which should prevail in courts and gave the defendant's trial an atmosphere prejudicial to him.

During the direct examination of Rose by the state, defendant's counsel said: "Just a minute, may I ask a question before making an objection here? Did you just say, Mr. Rose—" (Interrupted) Thereupon, in the presence of the jury, and in the absence of any contumacious or improper conduct on the part of counsel for the defendant, the trial court said: "Wait a minute. We will try this lawsuit the way it should be tried and there will be no more of that *shyster stuff*. Answer that question." (Italics supplied.)

At another time shortly thereafter, before the witness Rose had completed an answer favorable to defendant but unfavorable to the state, the trial court on its own initiative interrupted the witness and said: "Wait a minute, that will all go out and the jury will ignore it. Read the question and answer the question and quit commenting. Answer the question and tell the truth because you are not interested in this prosecution. This is the State of Nebraska, and you remember what I tell you or I will send you to jail. Answer the question again."

On motion to strike such remarks, and after a motion for mistrial because thereof had been made and overruled at the conclusion of the state's case, the trial court said to the jury: "Ladies and gentlemen of the jury, you are instructed that you are not to consider any of the remarks of the Court made either to the counsel or the witness Levi Rose as against the defendant; in arriving at your verdict in this case you are to ignore those remarks."

The state argues that objections to the remarks and motion for mistrial were not timely made by defendant im-

mediately following the making thereof but were delayed until the state rested its case, whereupon the statement made by the court remedied the situation. We cannot agree with that contention. The record discloses that the remarks appear in the record at the time they were made and defendant appropriately objected and moved for a mistrial because thereof shortly thereafter, when the state rested, but before submission of the case to the jury. He did not take the chances of a favorable verdict and then attempt to raise the question after conviction, thereby causing any waiver or loss of his rights. We, therefore, find that the contentions of defendant that the remarks made by the court were prejudicial to him have been properly preserved in the record. To hold otherwise would promote injustice by interposing a technicality without reason or substance, a responsibility which modern courts should refuse to assume.

In 26 R. C. L., Trial, § 27, p. 1026, it is said: "The judge should, during the course of the trial, refrain from remarks that are calculated in any way to influence the minds of the jury. This includes remarks to counsel touching the management of the case and reflecting on their conduct, as well as those touching the character of the witnesses and the value of their testimony; and if the remarks so made are material and improper, they may be prejudicial. Accordingly, if properly excepted to and brought into the record, they may work a reversal of the case on that ground. * * * The fact that prejudicial remarks as to the evidence were addressed to counsel, in the presence of the jury, and not to the jury does not destroy their prejudicial character."

In 23 C. J. S., Criminal Law, §993, p. 349, appears the following statement: "As a general rule, * * * it is the duty of the court to abstain carefully from any expression of opinion or comment on the facts or evidence, not only in its charge to the jury, * * * but also on the examination of witnesses and otherwise during the course of the trial.

The trial judge should not deny the existence of any fact bearing on the innocence of accused, or make any remark or inquiry in the presence of the jury concerning matters of fact at issue which indicates his opinion as to such facts; * * * ."

Both of the above expositions of the law were unequivocally approved by this court in Hansen v. State, 141 Neb. 278, 3 N. W. 2d 441.

In Kraus v. State, 102 Neb. 690, 169 N. W. 3, it was said: "It is well known to those who are familiar with jury trials that jurors are usually alert to discover the attitude of the court respecting the merits of the case, and particularly in criminal actions. For this reason, among others, the court should avoid even the appearance of partiality as between the parties."

We find without further discussion that the remarks made to the witness Rose were prejudicially erroneous. We find also that the remarks made to the defendant's counsel were prejudicially erroneous and duty impels us to discuss them briefly. "Shyster" is defined by Webster's New International Dictionary, Second Edition, Unabridged, as "A pettifogger; one who carries on any business, esp. legal business, in a mean and dishonest way; one without professional honor." See, also, Gribble v. Pioneer Press Co., 34 Minn. 342, 25 N. W. 710. It is an epithet so understood by people generally. To couple the word "shyster" with the word "stuff," as in the case at bar, could only mean to the jurors that counsel for defendant was such a lawyer and was so acting in the particular case which thereby reflected an indefensible opprobrium not only upon defendant's lawyer but the substance of his defense.

The comments made by the trial court to defendant's counsel were clearly so inflammatory and prejudicial to the rights of the accused as to require a mistrial. We are unable to conceive how the jury could thereafter have been oblivious to the implication that defendant was represented by a shyster lawyer, without professional honor, who was making a dishonest defense. The deficient effort of the trial

court to overcome them by instructing the jury to ignore the remarks and not consider them against the defendant did not cure the error. We necessarily conclude that defendant did not have a fair and impartial trial.

For the reasons heretofore stated, the case is reversed and remanded for a new trial.

REVERSED AND REMANDED.