PRICE CARRICO V. STATE OF NEBRASKA.

FILED NOVEMBER 13, 1922. No. 22456.

Criminal Law: INTENT: EVIDENCE: MISCONDUCT OF COURT. The in-
tent to commit a robbery may be manifested by the acts of the
accused; but, when he offers evidence to explain his acts and from
which the jury might reach the conclusion that they were not
done with the intent of the accused to commit the crime charged,
it is error for the trial court, in ruling upon the admissibility of
the evidence, to make remarks which the jury might construe as
a disparagement of the evidence.

ERROR to the district court for Madison county: WIL-
LIAM V. ALLEN, JUDGE. Reversed.

Frank A. Warner and William L. Dowling, for plaintiff
in error.

Clarence A. Davis, Attorney General, and Mason
Wheeler, contra.

Heard before MORRISSEY, C. J., ROSE, DEAN and DAY,
JJ., REDICK and SHEPHERD, District Judges.

MORRISSEY, C. J.

Defendant prosecutes error from a conviction of rob-
bery. On the evening of February 22, 1921, Earl J. Reed
was halted in the railroad yards of the Chicago & North-
western Railway Company at South Norfolk, where he
was employed as a brakeman, a shotgun was thrust against
his person, and he was directed to deliver his watch and
his pocketbook, which contained $35, to his assailant.
Reed obeyed the order. He soon thereafter notified the
police, and after a brief search by Reed and members of
the police force defendant and one Flesner were arrested.
Defendant, when first arrested, denied any knowledge of
the affair. Subsequently he admitted that he was the man
who had threatened Reed and demanded and received his
watch and money. His explanation was that he and his
companion, Flesner, went out with an unloaded shotgun
with the intention of perpetrating a joke upon a friend

named Doloc; that, at the time he received the property from Reed, defendant believed he was confronting his friend Doloc, and that he received the property intending to return it again to its owner. Flesner, who was charged as an accomplice, made the same explanation, but in addition thereto denied that he participated in the taking of the property from Reed. The jury returned a verdict of not guilty as to Flesner, and he is, therefore, not involved in this proceeding.

That defendant committed the acts charged stands admitted. He testified that there had been a number of "fake holdups" perpetrated in South Norfolk; that these matters had been discussed by him and a number of his acquaintances, and that one of his acquaintances, a Mr. Doloc, had made the remark that no one could "hold him up;" that on the evening of this occurrence Flesner and others had been guests at defendant's home, and during the evening defendant and Flesner agreed that they would borrow a shotgun and "hold up" Doloc, not for the purpose of taking his property, but merely as a joke; that in pursuance of this agreement defendant and Flesner borrowed a shotgun and went to the railroad yards expecting to meet Doloc; that they did not meet Doloc, but did meet Reed, and, believing Reed to be their friend Doloc, proceeded to carry out the joke; that he did not discover his mistake until after he had taken the watch and purse and its contents from Reed; that he then became confused, but began arrangements to effect a return of the property to Reed without letting Reed or other persons know of defendant's identity. In much of his story he is corroborated by other witnesses.

The chief complaint of defendant is directed to certain remarks made by the trial judge when ruling on objections to the admission of evidence. In reciting the evening's transactions defendant testified: "We sat down to eat supper and were talking there, and I don't know just who mentioned it, but we got to talking about a little fake holdup that had been pulled off down there in the yards

about a week before that. Some of the boys at the round-house, just among themselves, had pulled off a fake holdup. And something was said about we ought to go down there and have some fun with them. Some of them had said they couldn't be held up, and so I mentioned"— County attorney: "I will object to testimony of this kind because it is incompetent, irrelevant and immaterial and consti-tuting no defense whatever to this action, even if true." Defendant's counsel: "It goes to show the intent." By the court: "A man's intent is manifest by his actions. Objection sustained."

Defendant proceeded to testify along another line, but finally said: "Then Mr. Flesner and I * * * we thought we would disguise ourselves a little bit and go down and have a little fun with some of the boys, because they had said that nobody could hold them up." The county attorney objected to this testimony, and the court said: "I want it distinctly understood that there is no such a thing as a fake holdup. Get that in your mind. With that understanding, if this man wants to testify to what he did, he may go on." Defendant testified at length as to his motives and in relation to what he claimed he in-tended should be a mere make-believe robbery.

Defendant's wife was also permitted to testify to a con-versation had at their dinner table between defendant and Flesner indicating that they went out to play a practical joke upon Doloc and not for the purpose of effecting a robbery. Defendant called a neighbor, one Smith, as a witness, who testified that defendant called at his home at 10 or 10:30 o'clock on the night the robbery is alleged to have been committed, and that the witness had a conver-sation with defendant "about a holdup." The witness was asked "What was said?" Objection was made to this question, and defendant's counsel thereupon stated that the testimony was offered for the purpose of showing de-fendant's intention. And the court said: "A man's in-tent is shown by his actions. There is no joke in this case. There is no such thing as a fake holdup." The ob-

jection was sustained. Defendant then offered to show by the testimony of the witness that about 10 o'clock on the night the robbery is alleged to have occurred defendant went to the home of the witness Smith and asked for advice as to what he should do "with respect to disposing of a watch and money which he had taken from a man by the name of Reed in carrying out what he intended to be a joke on a man by the name of John Doloc, and that the witness on the stand thought the defendant Price Carrico was joking with him and told him that the thing to do was to wait until morning and he would tell him." Objection was made to this testimony and sustained by the court. John Doloc was called as a witness for defendant, and defendant's counsel sought to show by him the facts and circumstances supporting defendant's contention that his conduct was intended as a joke, but his testimony was excluded. The court, after sustaining an objection, stated: "The question of a fake holdup does not enter into this case."

The record as a whole shows that defendant was permitted to tell his entire story, and we are not prepared to say that the rulings of the court on the exclusion of the testimony offered was prejudicially erroneous. Much latitude is allowed the trial court in the exercise of its judicial discretion. It must, however, be conceded that, under the circumstances of this case, the acts themselves being admitted, the material question was that of intent. The court by a formal instruction told the jury: "The law presumes that a mature man, in the possession of his mental faculties, intends the reasonable, probable and natural consequences of his acts voluntarily and intentionally done, and this presumption will prevail unless upon a consideration of all the evidence bearing on the point you entertain a reasonable doubt whether such intent exists."

This is a correct statement of the law in the abstract, but it did not submit to the jury defendant's theory of the case. The instruction is not directly challenged, but, as

said by the supreme court of Pennsylvania, in *Common-wealth v. White*, 133 Pa. St. 182: "The main defense upon the trial below was that the whole affair was a joke. The learned judge does not appear to have referred to this in his charge. On the contrary, he stated in his rulings upon the testimony that 'it makes no difference whether the prosecutor thought it a joke or not.' It is very true that a highway robbery cannot be turned into a joke. It is equally true that a mere joke cannot be turned into a highway robbery."

The acts complained of stood confessed before the jury. The information charged that they were done with the intent of defendant "unlawfully and feloniously to take, steal and carry away" the property of the complaining witness. Defendant's plea of not guilty put the question of intent in issue, and to supplement his plea of not guilty he offered evidence to show that the whole affair was intended to be a joke. This evidence ought to have been submitted to the jury without disparagement. The judgment is reversed and the cause remanded.

REVERSED.