DALE SHERRICK, PLAINTIFF IN ERROR, V. STATE OF
NEBRASKA, DEFENDANT IN ERROR.
61 N. W. 2d 358

Filed November 20, 1953.   No. 33398.

*L. M. Clinton,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, and *Homer L. Kyle,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

An information filed by the State charged plaintiff in error, hereinafter called defendant, with statutory rape upon a young lady 14 years of age. The crime was allegedly committed by him on October 8, 1952, when he was aged 18 years and upwards. Defendant pleaded not

guilty, but after trial to a jury he was found guilty with a recommendation for leniency. His motion for new trial was overruled, and he was sentenced to serve 4 years in the penitentiary. He thereafter prosecuted error to this court, assigning in substance that the trial court erred: (1) In denying his challenge of a named juror for cause and in requiring him to exercise 3 of his peremptory challenges before a panel of 24 jurors had been passed for cause; (2) in permitting his age to be proved by school census records and a duplicate driver's license; (3) in admitting over his objections complaints made by prosecutrix to her mother; (4) in unduly restricting cross-examination of prosecutrix and an alleged accomplice; (5) in giving and refusing certain instructions; (6) in ruling that the evidence adduced by the State was sufficient to sustain a verdict of guilty; and (7) in that the court made remarks during the trial in disparagement of defendant's counsel and his evidence. We conclude that some of such assignments have merit, requiring reversal.

During voir dire examination of a named juror, the trial court overruled defendant's challenge for cause, and he assigns such action as error. An examination of the record discloses that the assignment has no merit. In that regard, the situation is comparable with and controlled by related rules stated in Kitts v. State, 153 Neb. 784, 46 N. W. 2d 158.

After voir dire had been completed, and 18 jurors were in the box and passed for cause, the trial court said: "The State has 6 preemptory (sic) challenges; the Defendant has 6. Proceed with 3 challenges each." Thereupon counsel for defendant said: "At this time, we would elect to use our entire 6 preemptory (sic) challenges after all 24 jurors have been passed for cause." In reply the court said: "Overruled; you may proceed to exercise your challenges." Such challenges were then made "under protest by the Defense." In that connection, each side then exercised three peremptory challenges, and

after six additional jurors had been passed for cause, each side exercised its remaining three peremptory challenges, and a jury was thus chosen, which tried the case without further objection or showing by defendant that he had been prejudiced in any manner by the court's requirement. Defendant's assignment with regard thereto is: "The court erred in requiring the defendant to exercise three of his peremptory challenges before a panel of twenty-four jurors had been passed for cause."

At the outset, it will be observed that section 29-2005, R. R. S. 1943, provides in part: "Every person arraigned * * * for any offence that may be punishable by imprisonment for a term exceeding eighteen months and less than life, shall be admitted to a peremptory challenge of six jurors; * * *." Such section also provides that in such cases: "The attorney prosecuting on behalf of the state shall be admitted to a peremptory challenge of * * * six jurors * * *." In that connection, however, no statute provides any procedural time, order, method, or manner by which such peremptory challenges shall be exercised. Nevertheless, this court has placed limitations upon the time, method, and manner of procedure with reference thereto in order to preserve for an accused his constitutional right to a fair trial before an impartial jury. In Rutherford v. State, 32 Neb. 714, 49 N. W. 701, "while the jury was being impaneled" the trial court ordered " 'defendant to exercise his first three peremptory challenges *before the panel is filled.*'" (Italics supplied.) Objections were taken to such order, and this court reversed, holding: "Peremptory challenges to jurors are not to be exercised until the jurors have been passed for cause and twelve men are in the box." In the opinion it is said: "From the earliest history of this state the course pursued has been to call twelve men into the box as jurors, and after administering to them an oath to answer questions as to their competency, the prosecuting officer, and then the attorney for the accused, would interrogate the persons

so called as to their qualifications and ability to sit in that case, and objections to the competency of any of them, if sustained, were immediately followed by calling another into the box in his stead, so that at all times there were twelve men ready to be sworn as jurors should the parties signify their acceptance of them. * * * When the challenges for cause are exhausted and a full jury obtained, then the statute provides for the exercise of peremptory challenges."

In Mathes v. State, 107 Neb. 212, 185 N. W. 425, after 12 jurors had been passed for cause, defendant exercised his first peremptory challenge, leaving but 11 such jurors in the box. Thereupon, he moved that another juror be called to be examined for cause before the exercise of another peremptory challenge. Such motion was overruled, the trial court ordering that the parties should exhaust their respective peremptory challenges " 'against those jurors who are now in the box, whereupon the box will be filled with talesmen or other jurors.' " This court reversed, and, adhering to Rutherford v. State, supra, held: "The rule is that peremptory challenges are not to be exercised until the jurors have been passed for cause and twelve persons are in the jury-box having the qualifications of jurors." See, also, Fetty v. State, 119 Neb. 619, 230 N. W. 440.

In Gravely v. State, 45 Neb. 878, 64 N. W. 452, this court said: "While the statute prescribes the number of challenges, it contains no provision as to the order in which the right shall be exercised by the state or by the prisoner. This being true, it is clear that the course of proceeding in regard to peremptory challenges is left to the sound discretion of the trial court, and its decision in that regard is no cause for disturbing the verdict, unless it is clearly made to appear that there has been an abuse of discretion." See, also, Johnson v. State, 88 Neb. 565, 130 N. W. 282.

It will be noted in the case at bar that the court at all times rightly permitted peremptory challenges of any

juror remaining in the box at any and all times involved, so that twice defendant had an opportunity to exercise peremptory challenges and select a jury from any of 18 jurors in the box who had been theretofore passed for cause. In other words, when peremptory challenges were required, 18 jurors, already passed for cause, were twice in the box available for service. After each party had exercised three peremptory challenges therefrom, six in all, there were still 12 jurors in the box, all of whom had been passed for cause and available for service. Six more jurors were then called and passed for cause, leaving 18 again in the box available for service. Then each party exercised three peremptory challenges therefrom, six in all, which left 12 qualified jurors whose impartiality is not questioned, to whom the cause was tried without objection. While the procedure followed by the trial court was unusual and in some respects not that commended since Rutherford v. State, *supra,* we fail to see how it could in any manner have been prejudicial to defendant. We find no authority and none has been cited by defendant commanding the trial court to have 24 jurors in the box passed for cause before the exercise of peremptory challenges may be required.

As stated in Bufford v. State, 148 Neb. 38, 26 N. W. 2d 383: "The true object of challenges, either peremptory or for cause, is to enable the parties to avoid disqualified persons and secure an impartial jury. When that end is accomplished there can be no just ground for complaint against the rulings of the court as to the competency of the jurors." We conclude that the assignment should not be sustained.

Defendant assigned that the trial court erred in permitting his age to be proved by school census records and a duplicate of his driver's license. In that connection, the trial court permitted the county superintendent of schools and the deputy county treasurer to testify, over objection, regarding such official records executed and

in their custody and control, as required by law, which respectively disclosed defendant's age to be over 18 years. Photostatic copies thereof were received in evidence after appropriate foundation had been laid therefor. The authorities relied upon by defendant are clearly distinguishable upon the facts and do not sustain his contention. In that regard, section 25-1279, R. R. S. 1943, specifically provides: "Duly certified copies of all records and entries or papers belonging to any public office, or by authority of law filed to be kept therein, shall be evidence in all cases of equal credibility with the original records or papers so filed."

In 32 C. J. S., Evidence, § 626, p. 477, citing authorities, it is said: "As a general rule, where some enactment or rule of law requires or authorizes a public official to make a certificate or written statement as to some matter or fact pertaining to and as a part of his official duty, such writing is competent evidence of the matter or fact therein recited." See, also, 32 C. J. S., Evidence, § 637, p. 489, § 638, p. 491, § 644, p. 509. Also, as stated in 32 C. J. S., Evidence, § 645, p. 509, under certain circumstances as here: "A public record or document offered in evidence may be explained by its custodian." See, also, 20 Am. Jur., Evidence, § 1023, p. 861, § 1026, p. 865. We conclude that the assignment has no merit.

Evidence adduced by the State discloses that prosecutrix said nothing to her mother about the incident until the next day after school was out, although she had not been intimidated by threats or otherwise, and had ample prior opportunity to have done so. On the other hand, prosecutrix did not testify that she ever complained to or said anything to her mother about the incident. She did testify, without objection, that she told her best friend and another about it at school the next noon, and such friend was permitted without objection to testify that at that time prosecutrix told her, "the boys had raped her." The record discloses that

after school the next day prosecutrix and her mother had a conversation about it in which the mother questioned her. When counsel for the State asked the mother what the conversation was, she was permitted over objection to testify that prosecutrix told her, "she had been raped" by defendant and Maurice Callies, using their nicknames in describing them. In that respect, defendant had timely and appropriately objected to such conversation substantially for want of sufficient foundation, that it was hearsay, involuntary, and unreasonably delayed, which made it inadmissible and of no force for any purpose. The objection was overruled and the admission of such evidence is assigned as error. We sustain the assignment.

It is not necessary, under the circumstances presented, to consider its admissibility on any theory of res gestae, which no one contends is involved here. In Jump v. State, 146 Neb. 501, 20 N. W. 2d 375, after quoting from Krug v. State, 116 Neb. 185, 216 N. W. 664, this court held: "In a prosecution for rape, the prosecutrix may testify in chief, if within a reasonable time under all the circumstances after the act was committed she made complaint to another, to the fact and nature of the complaint, but not as to its details; and that other may likewise testify in chief to such fact and nature of the complaint, but not as to its details."

The above case is cited as authority in 75 C. J. S., Rape, § 53, p. 523, where it is said: "The state may introduce evidence that the prosecutrix made a complaint after the commission of the alleged offense and may show where and to whom it was made, provided the complaint was voluntary and was made within a reasonable time after the act complained of."

In other words, the complaint must be voluntary and made as soon as practicable without any inconsistent delay, and if the complaint is involuntary or delayed without sufficient reason therefor being shown, such as intimidation or threats, or lack of opportunity, the com-

plaint has no force either as corroboration of prosecutrix or to support her credibility, and is inadmissible for any purpose. See, 75 C. J. S., Rape, § 53, p. 525; 52 C. J., Rape, § 90, p. 1063; People v. Rock, 283 Mich. 171, 277 N. W. 873.

Under the circumstances appearing in this record, we conclude that the conversation aforesaid allegedly had with the mother by prosecutrix was involuntary, inexcusably delayed, and inadmissible.

Defendant assigned that the trial court erred in unduly restricting cross-examination of prosecutrix in numerous respects set forth in the brief. They are too voluminous to recite here at length. It is sufficient for us to say that except for one unrelated exception, all of the questions asked by defendant on cross-examination of prosecutrix to which objections were sustained, were within the scope of the direct examination of prosecutrix, and the objections were erroneously sustained.

As stated in 58 Am. Jur., Witnesses, § 632, p. 352: "Generally speaking, however, when the direct examination opens a general subject, the cross-examination may go into any phase, and may not be restricted to mere parts which constitute a unity, or to the specific facts developed by the direct examination. Cross-examination should always be allowed relative to the details of an event or transaction a portion only of which has been testified to on direct examination. As has been stated, cross-examination is not confined to the identical details testified to in chief, but extends to its entire subject matter, and to all matters that may modify, supplement, contradict, rebut, or make clearer the facts testified to in chief by the witness on cross-examination."

As held in Seiner v. State, 138 Neb. 130, 292 N. W. 112: "Cross-examination is a leading and searching inquiry of the witness for further disclosure touching the particular matters detailed by him in his direct examination.

"Questions calling for evidence tending to show the

improbability of or to throw doubt upon statements made in the examination in chief are proper."

We particularly held in Redmon v. State, 150 Neb. 62, 33 N. W. 2d 349: "When a sex crime is charged to have been committed and the prosecuting witness testifies thereto, which is denied by the accused, great latitude should be allowed in the cross-examination of the prosecuting witness." In that case prosecutrix was a woman over 18 years of age, and we reversed, primarily upon the ground that the trial court erroneously excluded direct evidence and also unduly restricted cross-examination of her with relation to her habits and past immoral conduct and unchaste acts with other men, not too remote in time, for the purpose of affecting her credibility as a witness.

In Frank v. State, 150 Neb. 745, 35 N. W. 2d 816, defendant was charged with assault with intent to rape a young woman who had reached the age of consent. We reversed his conviction and, citing Redmon v. State, *supra,* said: "* * * not only that cross-examination of the prosecutrix should be as unrestrained and searching as is consistent with rules of law, but that it was also prejudicial error to exclude any direct competent evidence not too remote in time, showing specific immoral or unchaste acts and conduct by her with others, not only for the purpose of being considered by the jury in deciding the weight and credibility of her testimony generally, but for the purpose of inferring the probability of consent and discrediting her testimony relating to force or violence used by defendant in accomplishing his purpose and her claimed resistance thereto. See, also, State v. Wood, 59 Ariz. 48, 122 P. 2d 416, 140 A. L. R. 361, and annotations p. 364; 3 Wigmore on Evidence (3d ed.), § 924a, p. 459, § 979, p. 537. Concededly, there is authority to the contrary, but the foregoing is the modern realist rule, and we deem it the better one." It will be noted, however, that we confined our aforesaid conclusions in that opinion to cases wherein prosecutrix had reached the age of

consent, or consent was properly an issue.

We conclude that the general rule, insofar as applicable here, is that when a sex crime is charged to have been committed, and the prosecutrix testifies thereto, which is denied by accused, great latitude should be allowed in cross-examination of prosecutrix, but in cases wherein defendant is charged with rape or assault with intent to commit rape of a female child under 15 years of age whose consent is immaterial, prosecutrix cannot ordinarily be cross-examined with regard to previous unchaste acts with others for the purpose of testing her credibility. This is true because under section 28-408, R. R. S. 1943, "any female child under the age of eighteen years" cannot give her consent to carnal knowledge unless she is "over fifteen years of age and previously unchaste, * * *." In other words, when a female child under 15 years is prosecutrix, her previous chastity is immaterial for any purpose.

In Schlegel v. State, 143 Neb. 497, 10 N. W. 2d 264, this court held: "In a prosecution for statutory rape, the question of the previous chastity of the female child under 15 years of age at the time of commission of the act is immaterial, and the trial court should sustain appropriate objections to proffered evidence thereon."

In such a case, the law presumes that the prosecutrix could not give consent regardless of previous chastity or lack of chastity. As stated in People v. Abbott, 97 Mich. 484, 56 N. W. 862, 37 Am. S. R. 360: "But here the law conclusively presumes that the girl could not give her consent, and every act of intercourse with her would be a crime committed against her, and such acts could not, therefore, affect her credibility. Her reputation for truth and veracity could be inquired into, the same as of an adult, but she could not be impeached by her acts of intercourse." To hold otherwise would be to conclude that the same criminal act with which a defendant is charged and to which prosecutrix could not consent, had not only deprived an innocent female child of her

chastity, but had also deprived her of veracity, and in effect made her impossibility of consent a shield of defense for accused. Wesner v. People (Colo.), 250 P. 2d 124; State v. Smith, 90 Utah 482, 62 P. 2d 1110; Self v. State, 62 Okl. Cr. 208, 70 P. 2d 1083; Walker v. State, 8 Okl. Cr. 125, 126 P. 829; Annotation, 140 A. L. R. 365. Some of such authorities discuss two purported exceptions, permitting extension of the rule, but they have no application under the circumstances presented in this record.

Defendant was therefore not entitled to cross-examine prosecutrix with regard to previous unchaste acts with others except Maurice Callies, with whom she testified on direct examination that she had intercourse as part of the incident here involved, with regard to which great latitude should have been allowed. In other respects, also, cross-examination of prosecutrix was unduly restricted and prejudicially erroneous.

Concededly, "Great latitude should be allowed in the cross-examination of an accomplice who testifies for the people on a trial of his associates. He must disclose all that he and his associates may have said or done in relation to the offense, and may be required to disclose whether he had been promised leniency or immunity for testifying." 58 Am. Jur., Witnesses, § 655, p. 362.

Defendant argued that the trial court unduly restricted in certain respects the cross-examination of David Carleton, an alleged accomplice. To discuss such claim at length would serve no purpose. In that regard, it is sufficient to say that in the light of such rule, the trial court unduly restricted the cross-examination of such witness, although we do not conclude that such restriction was prejudicially erroneous.

Defendant argued that the court erred in refusing to give his requested instructions Nos. 2 and 4. To set them forth at length would serve no purpose. In the light of the foregoing rules, we conclude that they were properly refused. It is not error for the trial court to

refuse to give an instruction requested by defendant which does not contain a full and correct statement of the law applicable to the facts of the case as shown by the evidence. Clements v. State, 80 Neb. 313, 114 N. W. 271. This court considers all of the evidence and all of the instructions given to the jury in determining whether the giving or refusal of a particular instruction is prejudicially erroneous. Schlegel v. State, *supra*. It is not error to refuse to give requested instructions when the material substance thereof is included in other instructions given to the jury. May v. State, 155 Neb. 786, 54 N. W. 2d 62. Danielson v. State, 155 Neb. 890, 54 N. W. 2d 56, held that: "A trial court may properly refuse tendered instructions which are covered by instructions given on its own motion."

In Graham v. State, 90 Neb. 658, 134 N. W. 249, this court held: "Where the district court has by his instructions fully and correctly stated the law as it should be applied to the facts disclosed by the evidence in a criminal prosecution, he is not required to give further or additional instructions requested by the defendant."

As held in Jurgensen v. State, 135 Neb. 537, 283 N. W. 228: "Where the trial court has instructed generally on, and stated fully, all the issues in a criminal prosecution, error cannot be predicated on failure to give an instruction on a particular phase of the case unless a proper instruction thereon was requested."

Defendant assigned that the giving of instruction No. 14 by the trial court was prejudicially erroneous. We sustain that assignment. In that regard, a jury at a former trial of defendant had disagreed, and after the jury at the trial here involved had deliberated for some time on February 20, 1953, it inquired of the court in writing, signed by the foreman, whether it would "be permissable (sic) to add the following statement to the 'Guilty' verdict providing it is agreeable with all the jurors. We the jury recommend leniency."

Thereafter the court gave written instruction No. 13

which read: "Gentlemen of the Jury: In answer to your question, you may add the proposed recommendation to your verdict, if you so desire." No complaint is made of that instruction. However, after the jury had further deliberated, on February 21, 1953, it inquired in writing, signed by the foreman: "The jury has reached a verdict, providing His Honor severely reprimands the parents of the defendant the plaintiff and her parents in open court in the presence of the jury as being parties contributing to this crime and to the delinquency of the plaintiff." Clearly the force and effect of such offer or proposal was that the jury would return a verdict of guilty if the court would accept the offer and comply with its proposal. Otherwise, it inferred that the jury would not return a verdict. In reply, the trial court gave instruction No. 14 in writing, which read: "GENTLEMEN OF THE JURY, I shall comply with your request as far as I can but the parents of the defendant are not in this County and I have no way of getting them here. If they are in the county and I can get them I shall comply with your request. The complaining witness parents are in the county and I can get them." The force and effect of such instruction was to accept the jury's offer and consent in part to compliance with its proposal. As such it was an unauthorized, collateral inducement, encouragement, or invitation by the court to return a verdict of guilty based upon extraneous matters having nothing to do with the law, issues, or evidence. The jury thereafter returned a verdict of guilty, recommending leniency.

No authority has been cited exactly in point and we have found none. However, in Commonwealth v. Trunk, 311 Pa. 555, 167 A. 333, a district attorney and others were charged with aggravated assault and battery and false imprisonment. The trial court's instructions told the jury substantially in part, insofar as important here, that he would take into account the good faith of defendants in their use of a letter written by the district at-

torney, and other mitigating circumstances when he came to sentence them, if the jury found the defendants guilty. Their conviction was reversed. In speaking of the instructions and rights of defendants, the opinion said: "This reflected upon the good faith of the defendants in their use of the letter. It was proper for the jury to take their good faith into account. It was highly prejudicial to them for the court to say in effect that he would take it into account when he came to sentence them, if they found the defendants guilty. This was an invitation to the jury to so find them."

In Potard v. State, 140 Neb. 116, 299 N. W. 362, citing among other authorities Sharp v. State, 115 Neb. 737, 214 N. W. 643, this court used apt language when it said: "The prestige of a trial court with the ordinary jury is well known. Any attempt by the court to encourage a verdict will be seized upon by the majority as a coercive argument against the minority, especially if the minority be small. Such a situation does not meet the constitutional requirements of a speedy, public trial by an impartial jury."

We turn then to defendant's assignment that the evidence was insufficient to sustain a verdict of guilty. We conclude that it was sufficient. In that regard, both at conclusion of the State's evidence and after both sides had rested, defendants moved to dismiss for insufficiency of the evidence. Both motions were overruled.

In Stapleman v. State, 150 Neb. 460, 34 N. W. 2d 907, wherein defendant was charged with statutory rape upon a girl under 15 years of age, this court held: "Under the law of this state an accused charged with rape cannot be convicted solely on the uncorroborated testimony of the prosecutrix.

"If the prosecutrix is corroborated as to material facts and circumstances which tend to support her testimony and from which, together with her testimony as to the particular act, the inference of guilt may be drawn, the

corroboration is sufficient." See, also, Schlegel v. State, *supra;* Krug v. State, *supra.*

Herein the testimony of prosecutrix is positive with regard to the main facts constituting the offense, which defendant explicitly denied. However, other facts and circumstances appearing in the evidence adduced by the State sufficiently corroborated the testimony of prosecutrix. In fact, the record here discloses that prosecutrix was corroborated by an alleged eye witness. As recently as Onstott v. State, 156 Neb. 55, 54 N. W. 2d 380, which involved a charge of assault with intent to commit rape upon a girl between 10 and 11 years of age, this court said: " 'The jury are the judges of the credibility of the witnesses who testify before them and of the weight of their testimony, when properly admitted, and, unless the decision of the jury thereon is clearly wrong, their verdict will not be molested.' Morrow v. State, 146 Neb. 601, 20 N. W. 2d 602.

" ' "This court, in a criminal action, will not interfere with a verdict of guilty, based upon conflicting evidence, unless it is so lacking in probative force that we can say, as a matter of law, that it is insufficient to support a finding of guilt beyond a reasonable doubt." Williams v. State, 115 Neb. 277, 212 N. W. 606.' Haines v. State, 135 Neb. 433, 281 N. W. 860.

" 'It is only when there is a total failure of proof in a criminal case to support a material allegation in the information, or where the testimony adduced is of so weak or doubtful a character that a conviction based thereon could not be sustained, that the trial court will be justified in directing a verdict of not guilty.' Wanzer v. State, 41 Neb. 238, 59 N. W. 909."

In the light of the foregoing rules, this court has examined the record and concludes that the trial court did not err in refusing to sustain defendant's motion to dismiss. To recite the salacious details appearing in the evidence would serve no useful purpose.

Defendant also argued that remarks made by the trial

court, during voir dire and in ruling upon objections during cross-examination of the State's witnesses, disparaged defendant's counsel and the evidence sought to be adduced by him.

In Hansen v. State, 141 Neb. 278, 3 N. W. 2d 441, this court held: "It is the duty of the trial judge to abstain carefully from any expression of opinion or comment on the facts or evidence, not only in his charge to the jury, but also on the examination of witnesses or otherwise during the course of the trial.

"Such partial remarks must be avoided by the trial judge, for it is a well-known fact that jurors are usually alert to discover the attitude of the court respecting the merits of the case, and particularly in criminal cases.

"Positive declarations made by the trial court in an emphatic, argumentative, or sarcastic manner cannot be dislodged from the minds of the jury by later reading a formal instruction that the jury are the sole judges of all questions of fact.

"Comments, if any, which a trial judge may add to his rulings upon objections to the introduction of evidence must always be fair to the accused, judicial, and dispassionate, and not present the picture of the case out of focus." Such conclusions were reaffirmed in Moore v. State, 147 Neb. 390, 23 N. W. 2d 552. See, also, Carrico v. State, 109 Neb. 177, 190 N. W. 576.

In the light of the foregoing rules, we have examined the remarks made by the trial court about which defendant complains, and conclude that the propriety of some of them was properly challenged, but in view of the fact that reversal is required upon other grounds, we do not deem it necessary to determine whether or not such remarks were prejudicially erroneous.

For like reasons, we are not required to discuss or determine whether or not the sentence imposed upon defendant was excessive.

For reasons heretofore stated, the judgment of the

trial court should be and hereby is reversed, and the cause is remanded for new trial.

REVERSED AND REMANDED.