STATE OF NEBRASKA, APPELLEE, V. ELIJAH R. EDMONDS, APPELLANT.
153 N. W. 2d 364

Filed October 13, 1967.   No. 36561.

Robert L. Morrissey, for appellant.

Clarence A. H. Meyer, Attorney General, and Bernard L. Packett, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

The defendant-appellant, Elijah R. Edmonds, was prosecuted and convicted for violation of section 28-1213, R. R. S. 1943, prohibiting the making and uttering of a bank check with knowledge that he did not have an account, deposit, or credit in the bank on which it was drawn. The case was submitted to a jury which returned a verdict of guilty. Sentence was imposed by the trial court and the defendant appeals.

On March 18, 1966, defendant went to the place of business of Haley's, Inc., in Nebraska City, Nebraska, for the purpose of purchasing a used automobile. He contacted one Armbruster, a car salesman for Haley's, Inc., and purchased a 1961 model Cadillac automobile for the sum of $1,495. Defendant agreed to pay $350 as a cash payment, the balance to be covered by a chattel mortgage to General Motors Acceptance Corporation. Defendant drew a check bearing the date of March 18, 1966, to Haley's, Inc., for the $350 downpayment on the Iowa State Bank of Hamburg, Iowa. The defendant returned the next day at which time the finance papers were executed and the automobile delivered. The check was returned unpaid to the Otoe County National Bank on March 26, 1966, with a yellow slip attached stating that the check was returned unpaid because the account was closed. The president of Haley's, Inc., telephoned one Wray, one of its car salesmen residing in Hamburg, Iowa, and instructed him to call on the defendant and inform him of the nonpayment of the check. On Sunday morning, March 27, 1966, Wray contacted defendant and told him of the nonpayment of the check. Defendant said he knew the check had not been paid and that he would see Mr. Haley the next day. Wray saw defendant 4 days later, defendant not having seen Haley, and he was told by the defendant that his wife had made a covering deposit. Defendant did not contact Haley the following week and the check was turned over to the county attorney for prosecution.

The cashier of the Hamburg bank testified that on March 16, 1966, defendant's account with that bank was $0.86 and that no deposit was subsequently made. The account was reduced to zero by the assessment of service charges and on March 22, 1966, the account was closed and defendant informed in writing of that fact. The records of the Hamburg bank showed that defendant's account was less than $350 from and after December 27, 1965. From and after February 10, 1966, the account was at all times less than $10.

Defendant testified that he knew that he had no money in the Hamburg bank at the time he gave the check. He stated that he intended to have the money in the bank before the check was presented for payment at the Hamburg bank. He stated that some 30 or 40 days before he gave the check that he had borrowed $500 from the Beneficial Finance Company at Auburn, Nebraska, and that he had $350 in cash in an envelope at home. He testified that he had intended to deposit this money with the Hamburg bank to cover the check, that he had overlooked doing so, and because of his own negligence, he had not made the deposit. He further stated that he later went to the bank to make the deposit and was advised that his account was closed and that the bank would not reopen it. He admits, however, that he did not attempt to pay the amount of the check to Haley's, Inc., until April 12, 1966. On that date he contacted Haley and offered to pay the check if the criminal charge would be dismissed. The county attorney was contacted and defendant was informed that he could pay the check but that the complaint would not be dismissed. Defendant admitted that the only offer of payment included the condition that the charge of fraudulently uttering the "no fund" or "no account" check be dismissed.

The evidence was sufficient to take the case to the jury. The intent to defraud was a question for the jury. It is evident that the jurors did not believe defendant's

story which was within their province to do. Under the evidence adduced, the trial court properly overruled defendant's motions for a directed verdict made at the close of the State's case and at the close of all the evidence. The trial court was also correct in submitting the case to the jury.

" 'It is only when there is a total failure of proof in a criminal case to support a material allegation in the information, or where the testimony adduced is of so weak or doubtful a character that a conviction based thereon could not be sustained, that the trial court will be justified in directing a verdict of not guilty.' " Onstott v. State, 156 Neb. 55, 54 N. W. 2d 380. See, also, Sherrick v. State, 157 Neb. 623, 61 N. W. 2d 358.

The defendant assigns as error the giving of instruction No. 9. By this instruction the jury was told that section 28-1214, R. R. S. 1943, provides that in a prosecution against a maker of a no fund check, the making, drawing, uttering or delivering of a check, payment of which is refused by the drawee because of a lack of funds or credit, shall be presumptive evidence of intent to defraud and of knowledge of insufficient funds in or credit with such bank, provided such maker shall have not paid the payee thereof the amount due thereon within 5 days after receiving notice that such check shall have been protested, and if such notice of protest, or the drawee's notice of dishonor thereof, shall state that payment of such check was refused because of lack of funds or credit of the maker, then such notice of protest or notice of dishonor shall be presumptive evidence that there was a lack of funds in, or credit with, such bank for the payment of such check. The instruction further states that the presumption is not conclusive, and is rebuttable.

The evidence shows that defendant was advised by the bank in writing of the closing of his account with the bank. He was also advised by the agent of Haley's, Inc., that the check had been returned unpaid for lack

of funds. In addition, the defendant admitted that he knew there were no funds in the bank when he wrote the check. Under these circumstances, the giving of instruction No. 9 was not error.

Defendant further complains that a case was not made by the State because no consideration was given for the check. The check was a part payment on the completed sale of an automobile to him. The fact that the details of the transaction, such as the execution of the finance papers and the delivery of the automobile, were not completed until the next day does not indicate a want of consideration for the check. The giving of the check as a part payment of the purchase price affords the consideration required by the statute.

We have examined the remaining assignments of error and find them to be without merit. We find no error in the record and the judgment is affirmed.

AFFIRMED.