CLARK, Retired Circuit Judge.
A jury found defendant-appellant guilty of rape. The court fixed his punishment at imprisonment for life and sentenced him accordingly.
No contention is made on appeal as to the sufficiency of the evidence to support the verdict. Nevertheless, a short summary of the evidence should be conducive to a better understanding of the only issue raised on appeal.
According to the undisputed evidence, the alleged victim, a mentally retarded black female about twenty-one years of age, was raped by one or both of two white males early on the morning of June 23, 1979, who had picked her up by admitting her into an automobile in which they were riding. The defendant was the driver of the automobile. They rode around for a while and turned off on a dirt road. The rape took place in a wooded area near the automobile. The victim had been previously injured in her back and was wearing a body cast at the time. At the scene of the rape she was shot three times by a pistol that was in the automobile driven by defendant. Both the men left her where she was shot. In the meantime, the victim was soon reported missing, officers were called into service as to the matter, and the victim was found and promptly taken to a hospital in Montgomery where she was thoroughly examined. Expert testimony is extraordinarily strong to the effect that penetration had taken place, that intersexual action had occurred and that the victim’s hymen had been recently breached. The expert conclusions were based on objective symptoms alone. The victim was mentally incapable of telling or explaining what had occurred.
Defendant testified that he had taken his brother-in-law to work in the automobile of his brother-in-law and that after driving around he saw a man hitchhiking and picked him up. The man said his name was Larry Johnson. While they were driving around they smoked marijuana. They saw the alleged victim who appeared to be waving them down. They picked her up. He thereafter drove at the direction of the hitchhiker and went down highway 143 toward Millbrook, and the hitchhiker told him to turn off on a little dirt road and stop. According to him, the hitchhiker took “the keys out of the ignition” and he and “the young girl got out.” The next thing he “heard was one short scream” from her. Thereafter, the hitchhiker said to defendant, “Why don’t you go ahead and get some?” He said that he did get on her but that he was impotent. Upon his returning to the automobile, the hitchhiker went back to the victim and “done it to her again.” The hitchhiker then returned to the automobile and saw “the hand gun” and “picked it up and went back to the victim and shot her three times while she was on the ground. The shots were not in rapid succession. Defendant further said:
*1012 “And then he dropped the gun and the car keys, because the car keys and gun were in the same hand, and then he turned and ran into the woods.”
According to the defendant, he became scared and left the scene in the automobile after picking up the keys and the gun.
Appellant states the only issue in the form of a question as follows:
“Did the trial Court err to reversal by permitting the prosecutrix, after she had been found by him to be mentally incompetent to be a witness, to be sworn, take the witness stand, answer one question propounded by the solicitor, denying cross-examination by the defense, all over the objection of the defense?”
The transcript of the proceeding shows that after four witnesses had testified on behalf of the State, the following occurred:
“THE COURT: Let me see you-all just a minute.
“(At this time, an at-bar discussion out of the hearing of the Jury and the Court Reporter.)
“THE COURT: Ladies and gentlemen, let’s recess for lunch and be back, if you would, in the jury box at 1:15.”
While the jury was at lunch, the victim “after having been first duly sworn to tell the truth, the whole truth, and nothing but the truth, took the stand and testified.” She was interrogated by State’s counsel. The last questions asked her and the last answers given by her were as follows:
“Q. Do you know what sex is?
“A. No.
“Q. Do you remember having sex with anybody when you got shot?
“A. No.”
The transcript of the proceedings continues as follows:
“MS. BROOKS: I think that is all, Judge.
“THE COURT: Well, I think it is obvious that she is not capable of relating, so I would so rule. Now, do you-all want to discuss anything else?
“MR. GILLETT [State’s counsel]: No, Your Honor. Again, our initial position was we felt we at least had to make an offer. We are not surprised about the ruling.
“THE COURT: Well, I want you-all to be heard on this. They would be entitled for the jury to see her and for the jury to know that the court had ruled in the manner that the court did.
“MR. CAMERON [Defendant’s counsel]: Well, I guess, just being practical about it, Judge, that they would probably know, the jury would, the effect of your ruling.
“THE COURT: I will explain it to them.
“MR. CAMERON: Just bring her in and I will identify her?
“THE COURT: Maybe just simply ask her name and take her back out.
“MR. CAMERON: Well, could we do this: Let them do that and let me get an objection.
“THE COURT: Sure. Sure.
“Let the record show that this is all, her being identified to the Jury, is over the objection of the defendant but the Court feels that the Jury is entitled to see the prosecutrix. And I think in all fairness to the Jury, it would be incumbent on the Court to explain the Court’s ruling that I just made.
“(At this time, luncheon recess was had by all. Subsequent thereto, the following was had and done of Record in the presence of the Jury).
“THE COURT: Over the lunch hour, ladies and gentlemen, as the law says, it is the Court’s responsibility to ask Ms. Stewart enough questions to ascertain in my mind that she really does not understand the nature of what allegedly took place. And in the Court’s judgment, too, she does not understand the nature of testifying in Court nor is she able to relate in an understandable way, one that would be intelligible, any testimony at all. As the law says, this is a problem that the court has to address itself to, to which I have, and I have said that I do not think that she is a competent witness. I do think that you-all are entitled to know the basis for that and to know the basis for her not being called upon to give fact testimony. I do think that you-all *1013 are entitled to see her and since she is an integral part of this case, I am going to permit them to call her, ask her her name and we will not embarrass her any further or go any further with that. She will be excused.
“MS. BROOKS: Your Honor, may her sister come with her?
“THE COURT: Yes.
“DIRECT EXAMINATION CONTINUED
“BY MS. BROOKS:
“Q. Shirley, can you tell me your name? “A. Shirley Stewart.
“Q. Shirley Stewart?
“A. (Witness nods head in an affirmative manner.)
“MS. BROOKS: Thank you, Shirley.
“(At this time, the Witness was excused and released.)”
We are not apprised as to the subject matter or content of the “at-bar discussion out of the hearing of the jury and the court reporter” that took place just before the jury was excused for the lunch recess, but it is hardly doubtful that the discussion was with reference to the appropriate method of determining whether the prosecutrix was mentally competent to testify as a witness, presumably on call of the State as the State had not rested its case at the time. There is no indication of any objection on the part of the defendant as to the procedure that immediately followed out of the presence of the jury.
We are unable to determine the nature or point of the statement of defendant’s counsel, “Well, could we do this. Let them introduce that and let me get an objection,” but the court apparently construed the statement as an objection of the defendant to the witness’s “being identified to the jury.” It is certain that no other objection was voiced by defendant and that the particular issue now raised by appellant to the effect that there was a denial of “cross-examination by the defense” was not raised on the trial.
We agree with appellant that the right of cross-examination is a constitutional right. We disagree with appellant in his contention that there was a denial of his right to cross-examination.
In the first place, we do not find any assertion of any right to cross-examine the witness. In addition, the answer of Shirley Stewart in giving her name in reply to a question by State’s counsel did not establish a status of a witness adverse to defendant.
Appellant correctly states that the English rule, often called the “wide open rule,” prevails in general in Alabama, to the effect that the cross-examiner may elicit from the witness relevant and material evidence even though it is not connected with any matter related by the witness on direct examination. This principle, however, pertains to the question of the allowable scope of cross-examination; it does not delineate under what circumstances a person becomes a witness within the meaning of the word “witness” as such word is employed when reference is made to the “cross-examination” of witnesses. Judge McElroy deals with that question as follows:
“The mere fact that a party summons a person to be a witness, has him sworn in or places him under the rule does not make such person the witness of such party. Nor does the mere fact that a party calls a person to the stand make him the witness of such party. Such person becomes the witness of the party who called him when that party first elicits from him facts having some relevancy in the case. The mere elicitation of testimony from a person as to his name and address, or other fact without probative value on an issue in the ease, or testimony as to his lack of knowledge about the matter which he is asked about, does not make such a person the witness of the party who called him to the stand and elicited such worthless testimony. If the party who calls a person to the stand does no more than elicit testimony of the kind just mentioned and the opponent thereafter proceeds to elicit relevant testimony from such person, the latter becomes the witness of the opponent.
*1014 “If the trial judge calls a person to the stand for the avowed purpose of being the court’s witness, but the person under the judge’s question has not testified to any relevant fact, such person is not the judge’s witness within the meaning of the rule that any party may impeach a witness called by the judge.”
Gamble, McElroy’s Alabama Evidence § 171.01(1) (1977)
See Peoples v. State, 257 Ala. 295, 58 So.2d 599 (1952); Randolph v. State, Ala.Cr.App., 331 So.2d 766, cert. denied 331 So.2d 771 (Ala.1976).
Within the meaning of the subject “cross-examination of a witness,” Shirley Stewart was not a witness for two reasons: (1) She had been determined by the court to be mentally incompetent to testify and (2) in merely stating her name to the question calling for her name, she said nothing that was of any probative value in the case.
Although it is not necessarily applicable to evidence in criminal cases, support for what has been stated above is found in the last sentence of Rule 43(b) of the Alabama Rules of Civil Procedure:
“Except as stated in the last preceding sentence, any witness called by a party and examined as to any matter material to any issue may be cross-examined by the adverse party upon all matters material to every issue of the action, (emphasis supplied).”
The Supreme Court of Delaware had occasion recently, while construing a statute, to consider the refinements of the word “witness” and the word “cross-examine” as used together. The case itself is not in point here, but the following discussion is:
“Second, the Statute requires the witness to be ‘subject to cross-examination.’ Cross-examination has been given the following definition:
“‘CROSS-EXAMINATION. In practice. The examination of a witness upon a trial or hearing, or upon taking a deposition, by the party opposed to the one who produced him, upon his evidence given in chief, to test its truth, to further develop it, or for other purposes.’
“Black’s Law Dictionary 450 (rev. 4th ed. 1968). See also Sherrick v. State, 157 Neb. 623, 61 N.W.2d 358, 365 (1953). In this country cross-examination has been tied to the content or at least to the occurrence of direct examination. See Philadelphia and T. R. Co. v. Stimpson, 39 U.S. (14 Pet.) 448, 10 L.Ed. 535 (1840), discussed at 10A Words and Phrases, ‘Cross-Examination’ p. 250; White v. Dougherty, 1 Boyce 355, 24 Del. 355, 76 A. 609 (Super.Ct.1910), rev’d on other grounds, 2 Boyce 316, 25 Del. 316, 80 A. 237 (Sup.Ct.1911); A. H. Angerstein, Inc. v. Jankowski, 5 Storey 304, 55 Del. 304, 187 A.2d 81 (Super.Ct.1962). In short, cross-examination does not simply mean the right of an adversary to examine the witness. It generally means the right of the adversary to examine the witness after the witness has been examined by direct examination. Thus, in the present case, the state had the burden of examining the witness on direct examination under the Statute.”
Keys v. State, Del., 337 A.2d 18, 22-23 (1975)
Wray v. State, 154 Ala. 36, 45 So. 697 (1908), relied upon by appellant, is interestingly close but essentially distinguishable. The court held in a case in which defendant was charged with the murder of one Freeman that there was a denial of his right of cross-examination of a man by the name of C. M. Landsdowne, who was called by the State and was asked and answered one question. Other evidence had shown that Landsdowne was in the room at the time Freeman was shot. A vital issue in the case was: Who shot Freeman? The question asked Landsdowne was: “Mr. Landsdowne, did you kill George Freeman?” The witness answered: “No, sir.” The witness was gravely ill and “was scarcely able to speak.” He was brought into court in the presence of the jury on a cot. Defendant objected to the examination of the witness, stating that “He appeared to be mentally and physically not in condition to be cross-examined.” The court overruled the objection and al *1015 lowed defendant to show the physical condition of the witness by testimony of a physician. Upon hearing the testimony, the trial judge said:
“ . . .1 don’t believe this man is in a physical condition to go through the ordeal of an examination. I think it would be wrong and inhuman, I don’t feel like taking the responsibility, because I don’t need a physician to tell me he is not in condition to go through the ordeal of an examination. He is a mighty sick man, and his condition is such that an examination might bring on complications that might prove fatal, and I don’t feel like taking the responsibility myself, and will not do it.”
Defendant’s attorney asked the court whether or not he refused to allow the defendant to cross-examine the witness. The opinion of the Supreme Court states: “The court held that he did not so refuse.” Defendant did not attempt to cross-examine him and made it clear that the reason he was not doing so was that the physical condition of the witness was such that he should not be cross-examined.
The essential difference between Wray and this case is that in Wray the witness was asked a vital question on direct examination and gave a categorical answer unfavorable to the defendant. In the instant case, the question and answer presented nothing of any value whatever on any legal issue in the case or on any controversy between the parties.
We find no error in the record prejudicial to the defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.